UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 10-20368-CR-UNGARO

UNITED STATES OF AMERICA,

    Plaintiff,

v.

DENZIL ROY MONTAGUE, JR.,

    Defendant.
_____/

## ORDER AFFIRMING MAGISTRATE JUDGE'S REPORT

THIS CAUSE is before the Court upon Defendant's Motion to Suppress ("Motion"), filed July 1, 2010.  (D.E. 31.)  The matter was referred to Magistrate Judge Andrea M. Simonton, who, on July 27, 2010, after conducting an evidentiary hearing on the matter, filed a Report recommending that the Motion be denied.  (D.E. 42.)   The parties were afforded the opportunity to file objections to the Magistrate Judge's Report; on August 11, 2010, the Defendant filed objections to the Report.  The matter is now ripe for review.

By way of background, Defendant is charged with a single count of possessing a firearm, having previously been convicted of a felony, in violation of 18 U.S.C. §§ 922(g)(1) and 924(e).  In his Motion, Defendant challenges the legality of the investigatory stop and search of his person that uncovered the handgun that forms the basis for the instant charge.  After conducting an evidentiary hearing, the Magistrate Judge concluded that the investigatory detention and frisk of Defendant Montague were constitutionally permissible and led to the lawful seizure of the

firearm.[1]

In his objections, Defendant Montague challenges one of the Magistrate Judge's factual findings; he argues that the evidence supports a finding that Officer Rubido, who responded to a tip from a known informant regarding Defendant's behavior, was told that Defendant "may have been carrying a gun," as opposed to the Magistrate Judge's finding that Rubido was told Defendant "was carrying a gun in his back pocket."

Upon a review of the record, the Court finds that the Magistrate Judge's finding that Officer Rubido was told that the Defendant was carrying a gun in his back pocket is supported by the evidence.  Officer Rubido testified that he received a call to his personal cell phone from the security guard at the Quality Inn in Palmetto Bay, Florida; Rubido testified that the security guard told him "that there was a gentleman at the Quality Inn that was acting in an improper manner, carrying a gun."  (D.E. 47-1, at 9:2–3.)  En route, Officer Rubido called in to dispatch to inform that he was reporting to the Quality Inn, because there was "somebody walking around with a gun in their back pocket."  (D.E. 47-1, at 15:5–10; DX 1.)  When Rubido arrived at the Quality Inn, the security guard who had called him indicated that the Defendant was the individual about whom he had called Rubido and again told Rubido that Defendant was carrying a firearm.  (D.E. 47-1, at 30:10–18.)  The Court finds that this evidence supports the Magistrate Judge's finding that Officer Rubido was told that Defendant was carrying a gun in his back pocket.

Defendant also objects to one of the Magistrate Judge's conclusions of law.  In her Report, the Magistrate Judge concludes that the police officers in the case at bar had reasonable

---

[1] At the hearing, the Government introduced four photographs (GX 1–4) and Defendant introduced into evidence a recording of a call Officer Rubido made to dispatch on his way to the scene of Defendant's subsequent arrest (DX 1).

suspicion to believe criminal activity was afoot, thereby justifying the temporary investigative stop and frisk of Defendant.  The Magistrate Judge bases her conclusion, in part on Florida Statute § 790.02, which provides that carrying a concealed weapon is a breach of the peace, and any officer authorized to make arrests under the laws of the state may make arrests without warrant when the officer has reasonable grounds or probable cause to believe that the offense of carrying a concealed weapon is being committed.  Fla. Stat. § 790.02.

Defendant objects to this conclusion, arguing that the holding in *Regalado v. State*, 25 So. 3d 600 (Fla. 4th DCA 2009), requires the suppression of the firearm seized from Defendant.  In *Regalado*, the District Court of Appeal for the Fourth District of Florida held that an officer's observation of what appeared to be a gun tucked into the defendant's waistband, was not, without more, sufficient to provide the officer with the authority to pull his service weapon, order the defendant to the ground, and conduct a patdown search of his person.  *Id.*  The court there noted that, because it is legal to carry a concealed weapon in Florida, if one has a permit to do so, the mere possession of a weapon, without more, cannot justify a *Terry* stop.  *Id.* at 601.

The Magistrate Judge notes in her Report that *Regalado* is contrary to the holdings of at least two other Florida District Courts of Appeal, *State v. Burgos*, 994 So. 2d 1212 (Fla. 5th DCA 2008), *State v. Navarro*, 464 So. 2d 137 (Fla. 3d DCA 1985), and finds those other holdings to be more persuasive.  In those cases, the courts found that police officers had reasonable suspicion to conduct a *Terry* stop of an individual upon reliable information that the individual was carrying a concealed weapon.

Defendant objects that the facts in *Burgos* and *Navarro* are distinguishable from those in the case at bar.  In *Burgos*, the officers conducted a stop and frisk of the defendant after the

defendant admitted to police that he was carrying a concealed weapon. *Burgos*, 994 So. 2d at 1213. And in *Navarro*, the Court found reasonable suspicion to conduct a *Terry* stop and frisk the defendant upon a police officer's observation of what appeared to be the butt or stock of a gun in the defendant's waistband. *Navarro*, 464 So. 2d at 139.

While Defendant may be correct that certain factual distinctions exist between those cases and the case at bar, he has not presented any convincing argument as to why those distinctions should affect the Court's analysis. And upon a review of the record, the Court finds that these factual distinctions do not affect the conclusion reached by the Magistrate Judge. In the case at bar, as in both *Burgos* and *Navarro*, the police officers had reliable information that Defendant was carrying a concealed weapon at the time they conducted the *Terry* stop and frisk. *Burgos*, 994 So. 2d at 1213–14; *Navarro* 464 So. 2d at 139. Whether that information was provided by the suspect himself, as in *Burgos*, from the officer's observation of the weapon, as in *Navarro*, or from some other reliable source, as in this case, does not affect the reasonable suspicion analysis. In those cases, as in the case before the Court, the officers had reasonable suspicion to believe the defendant was carrying a concealed weapon, thereby justifying the temporary investigative detention and patdown search of the defendant.

Defendant also argues that *Navarro* is inapplicable because it was "decided prior to the implementation of Florida Statute 790 related to the issuance of concealed weapon permits." Defendant makes no further argument as to why that should affect the Court's analysis of whether the police officers had reasonable suspicion to conduct a *Terry* stop and frisk of Defendant, and the Court does not see any reason why that would be so.

The Court has considered Defendant's objections to the Magistrate Judge's Report but

ultimately agrees with the conclusions therein.  In sum, considering the totality of the circumstances, the police had reasonable suspicion to believe Defendant was engaged in criminal activity, thereby justifying a temporary investigative detention.

In the instant case, the police responded to reliable information from a known citizen informant that Defendant had a gun in his back pocket and was acting improperly.  Upon their arrival at the Quality Inn, the citizen informant confirmed that Defendant was the individual in question.  The Defendant interrupted Officer Rubido's conversation with the security guard, appeared anxious and jittery and acted aggressively, waving his arms.  Defendant was sweating, his eyes were glassy, watery, and red.  Under the totality of the circumstances, the officers had reasonable suspicion to believe criminal activity was afoot, sufficient to conduct a limited, investigative detention and patdown search of Defendant's person.  As the court noted in *Burgos*, it is not necessary that the police allow an individual to continue in possession of a firearm while they confirm the suspected crime to an absolute certainty.  *Burgos*, 994 So. 2d at 1214.  Accordingly, having conducted a *de novo* review of the record, it is hereby

ORDERED AND ADJUDGED that the Magistrate Judge's Report is RATIFIED, ADOPTED, and AFFIRMED; Defendant's Motion to Suppress (D.E. 31) is DENIED.

DONE and ORDERED in Chambers, at Miami, Florida this 18th day of August, 2010.

_____
URSULA UNGARO
UNITED STATES DISTRICT JUDGE

copies provided:
Counsel of record